IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY R. CARULLI, <br>    *Plaintiff*, <br><br> v. <br><br> CORRECTIONS OFFICER JOHN TIBBS, <br>    *Defendants*. | Docket No. 2:23-CV-2030 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Timothy R. Carulli, by his attorneys at the Mizner Law Firm, files this Complaint and states as follows:

### A. Parties.

1. Plaintiff Timothy R. Carulli is an adult individual who is currently residing in Huntingdon, Pennsylvania.

2. Defendant correction officer John Tibbs is an adult individual who, at all relevant times, was employed by Jefferson County as corrections officer at the Jefferson Fayette County Jail, located at 578 Service Center Road, Brookville, PA 15825. At all relevant times, Defendant Tibbs was acting in his capacity as a corrections officer at the Jefferson County Jail, under color of state law. Defendant Tibbs is being sued in his personal capacity.

### B. Jurisdiction and Venue

3. This Complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983.

4. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

5. This Complaint also includes pendant state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

### C. Facts

7. Mr. Carulli is a combat veteran of the United State Marines, and mechanic by trade, who was incarcerated in the Jefferson County Jail at all times relevant to this action.

8. He was incarcerated in the Jail after being charged with various offenses consisting of simple assault, theft by unlawful taking, and resisting arrest. In addition, Mr. Carulli was waiting to be sentenced for a violation of the conditions of probation of a previous matter.

9. At approximately 6:00 am on April 20, 2022, Mr. Carulli was in an altercation with another inmate on J block.

10. After two inmates were separated, Mr. Carulli was escorted by defendant Officer Tibbs to a bench in the hallway outside of H block.

11. Once at the bench, at approximately 6:30 a.m., defendant Officer Tibbs put a belt on Mr. Carulli, cuffing his hands to the belt and then shackling his left leg, at his ankle, to the leg of the bench.

12. Mr. Carulli was thus left completely defenseless.

13. The manner in which Mr. Carulli was handcuffed and shackled to the metal bench became more uncomfortable.

14. To minimize the level of discomfort, Mr. Carulli leaned over on the bench until after 8:00 am, when CO Miller passed.

15. At that point Warden Meyers spoke over the radio system and told CO Miller to tell Mr. Carulli to sit up.

16. CO Miller did as directed.

17. Inappropriately, Mr. Carulli said something to the effect of, "I don't have to."

18. Co Miller responded something to the effect of, "yes, you do."

19. Mr. Carulli again said something to the effect of, "no, I don't."

20. CO Miller then spoke over the radio to Warden Meyers and told him that Mr. Carulli was not sitting up.

21. Warden Meyers told CO Miller that since Mr. Carulli did not want to sit up, he (CO Miller) should cuff Mr. Carulli to the "D" ring on the wall and see how he (Carulli) would like that.

22. Mr. Carulli knew that such a command was an unconstitutional form of punishment and was arguing this point with CO Miller, when suddenly, without provocation, defendant Officer Tibbs rushed the defenseless Mr. Carulli from his right side.

23. Defendant Officer Tibbs struck Mr. Carulli with significant force, driving Mr. Carulli to the ground, landing on the top of his right side and overextending his left leg, which was still shackled to the leg of the bench.

24. This assault, and defendant Officer Tibbs' subsequent removal from the area by Warden Meyers, was witnessed by multiple officers.

25. Mr. Carulli was assisted by two correctional officers back onto the bench.

26. Mr. Carulli was experiencing excruciating pain and felt that his left shoulder, ribs and ankle were severely injured.

27. A medical provider came to the bench and lifted up Mr. Carulli's shirt and said she would order x-rays.

28. However, no one removed or adjusted either the waist belt and cuffs or leg shackle.

29. Mr. Carulli remained in that same position for approximately another two hours, despite the difficulty he had breathing because of the painful ribs.

30. During that time, Mr. Carulli asked every officer that passed to help him get to the hospital.

31. At approximately 10:30 am, an x-ray technician came to perform the x-rays and thereafter, Mr. Carulli was placed into a cell that was under camera observation.

32. The x-ray revealed a fracture to the left shoulder and Mr. Carulli was sent to the Penn Highlands Brookville Hospital.

33. Mr. Carulli's pain was a 10 out of 10 on the pain scale, yet no one did anything for his pain for five or six hours, until he was taken to the Penn Highlands Brookville Hospital.

34. At Penn Highlands Brookville Hospital, Mr. Carulli complained of pain in his left anterior and lateral shoulder, with limited range of motion, pain in his right lower anterior ribs, pain in his right wrist and left ankle, and severe pain with breathing.

35. As a result of defendant Officer Tibb's assault, Mr. Carulli suffered injuries to his left shoulder/arm, multiple ribs, right wrist, and left ankle, including:

    a. Closed humeral fracture of the left shoulder;

    b. Scarring;

  c. Permanent bump on his leg ankle;

  d. Difficulty sleeping;

  e. Anxiety;

  f. Pain and suffering;

  g. Mental anguish and upset;

  h. Humiliation and embarrassment; and

  i. Loss of life's pleasures.

### E. Legal Standards

36. The Fourteenth Amendment protects pre-trial detainees from the infliction of cruel and unusual punishment, and provides in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

37. The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham* v. *Connor*, 490 U.S. 386, 395, n. 10 (1989) (citing *Bell v. Wolfish,* 441 U.S. 520, at 535-539 (1979).

38. "[P]unishment can consist of actions taken with an 'expressed intent to punish' [but] in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Bryant v. Salem Cty.*, 2019 U.S. Dist. LEXIS 104990, at *13 (D.N.J. June 24, 2019), citing

39. *Bryant v. Salem Cty.*, 2019 U.S. Dist. LEXIS 104990, at *13 (D.N.J. June 24, 2019), citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

40. The appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. *Kingsley,* at 2474.

41. "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Instead, the [Supreme] Court [in *Kingsley*] held that 'a pretrial detainee must show *only* that the force purposely or knowingly used against him was objectively unreasonable.' The [Supreme] Court thus clarified that the Fourteenth Amendment, like the Fourth, exclusively employs an objective-reasonableness standard." *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021)(internal citations omitted).

## COUNT I

### EXCESSIVE FORCE IN VIOLATION OF THE FOURTEENTH AMENDMENT

*Timothy R. Carulli*
*v.*
*Corrections Officer John Tibbs*

42. The foregoing averments are hereby incorporated by reference, as if set forth fully herein.

43. Defendant Officer Tibb's use of excessive force was exercised for solely personal animus.

44. The assault on Mr. Carulli was not done for any legitimate penological or other legitimate purpose.

45. As a direct and proximate result of defendant Officer Tibbs' use of excessive force against Mr. Carulli, he has suffered:

    a. Closed humeral fracture of the left shoulder;

    b. Scarring;

    c.  Permanent bump on his leg ankle;

    d.  Difficulty sleeping;

    e.  Anxiety;

    f.  Pain and suffering;

    g.  Mental anguish and upset;

    h.  Humiliation and embarrassment; and

    i.  Loss of life's pleasures.

WHEREFORE, Plaintiff Timothy R. Carulli respectfully requests that this Honorable Court enter judgment in his favor and against Defendant John Tibbs in an amount in excess of $75,000.00, along with attorneys fees and all other relief permitted by law.

## COUNT II - ASSAULT AND BATTERY

*Timothy R. Carulli*
*v.*
*Corrections Officer John Tibbs*

46. The foregoing averments are hereby incorporated by reference, as if set forth fully herein.

47. As an employee of Jefferson County, Defendant Officer Tibbs' liability for injuries he causes is limited by Pennsylvania statute.

48. However, "immunity is abrogated, with respect to local agency employees, for conduct which constitutes a crime, actual fraud, actual malice, or willful misconduct." *Cook v. Vernachio,* 2008 Pa. Commw. Unpub. LEXIS 6, at *9 (Commw. Ct. May 14, 2008), citing *Jones v. Philadelphia,* 893 A.2d 837, 843 (Pa. Cmwlth. 2006).

7

49. Defendant Officer Tibbs violently attacked Mr. Carulli without justification or any other legitimate penological purpose, causing a harmful and offensive touching.

50. Defendant Officer Tibbs' conduct, in aggressively charging Mr. Carulli while he was restrained and vulnerable, and injuring him by tackling him to the ground, was so wanton that it constitutes willful misconduct.

51. Defendant Officer Tibbs caused Mr. Carulli to be in fear and imminent apprehension for his health and safety.

52. As a direct and proximate result of Defendant Tibb's assault and battery, Mr. Carulli has suffered:

   a. Closed humeral fracture of the left shoulder;

   b. Scarring;

   c. Permanent bump on his leg ankle;

   d. Difficulty sleeping;

   e. Anxiety;

   f. Pain and suffering;

   g. Mental anguish and upset;

   h. Humiliation and embarrassment; and

   i. Loss of life's pleasures.

WHEREFORE, Plaintiff Timothy R. Carulli respectfully requests that this Honorable Court enter judgment in his favor and against Defendant John Tibbs in an amount in excess of $75,000.00, along with attorneys fees and all other relief permitted by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

PA Supreme Court ID 53323
John F. Mizner
jfm@miznerfirm.com

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

**JURY TRIAL DEMANDED**